[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
The plaintiff brought this action in two counts. The first alleges the defendant's oral agreement to pay the sum of $100,000 within two years;[1] the second alleges a modification of the oral agreement by the parties in which the defendant agreed to make payments of $1,000 per month. The defendant denied the material allegations of the complaint and, appearing pro se, was permitted CT Page 10020 to file a special defense of the statute of limitations. The defendant also claimed, during the trial of the case that the $100,000 was not a loan, but an investment in the nature of a `partnership interest' in her art gallery business.
From the evidence I find the following facts:
The plaintiff, an Italian citizen residing in Rome, Italy, by electronic transfer on February 27, 1990 wired the sum of $100,000[2] to the defendant. The defendant used the funds to acquire larger quarters for her gallery and prepay the minimum rent on a three year lease. The defendant signed plaintiff's Exhibit 1, a letter dated February 2, 1990 (which predated the wire transfer) after it was completed. Exhibit 1 identifies the transfer of funds as a loan.
Although the defendant's gross income from sales at her gallery increased after she moved to the new quarters, she made no payments to the plaintiff until July 31, 1992 when she sent him a check for $1,000 accompanied by a letter dated July 31, 1992 stating, in pertinent part: "For now expect a monthly payment of $1,000 by the 30th of each month. Of course if the holiday season is decent I will definitely be able to send more by December 30th.
If you want me to do the next payments as a wire transfer I still need the account number. Otherwise expect a cashier's check.
As I said to you earlier, I do not intend to sell out this business yet so please, accept this interim arrangement." Plaintiff's Exhibit 2.
Thereafter, from October 4, 1992 to January 5, 1994, checks were deposited to plaintiff's account at the Chemical Bank which were for $1,000 each, except the third check of $3,000, and the last of $2,000. The total deposited was $14,000. The second check dated October 4, 1992 bore a notation: "Profit share monthly pro-rated." Two of the other checks, dated May 29, and September 7, 1993[3] bore the notation "profit share"; none of the other checks or receipts bore any notation. None of the checks in evidence were endorsed by the plaintiff, as all except the first dated July 31, 1992, were deposited by the defendant to the plaintiff's account. CT Page 10021
The defendant made no more payments after January, 1994, the business failed, and she went out of business in 1996. The plaintiff commenced this action May 9, 1996.
 II.
The defendant claims that the transaction was a partnership investment in her gallery and she points to the notated checks and other documents in support of that claim. These documents include her application to the IRS for an employer identification number. There is no writing between the parties, signed or adopted by the plaintiff in support of that claim.
The defendant's claim of partnership is undercut by her federal income tax returns, which during the relevant period from 1990 through 1996, were individual tax returns (Form 1040) and the Schedule Cs which were part of the returns all described her business as a `sole proprietorship'.
Moreover, those tax returns were inconsistent with her business records, and indicated net profits of the business in the years 1990-1995,[4] inclusive, although no payments to the plaintiff were actually made until July 31, 1992. Nor did she provide any share of the profits prior to July, 1992 or after January, 1994 to the plaintiff. Finally, there was no evidence of what the plaintiff's supposed partnership share was, or that there was a meeting of the minds on it, except for defendant's self serving statement in Exhibit D that a certain sum represented 49% of the profits for 1992. This exhibit also contains a statement by the defendant that she had already spoken to an attorney retained by the plaintiff in this matter.
Even if the amounts credited to the plaintiff commencing July 31, 1992 may be considered a share of the profits, thus raising an inference that he was a partner in the defendant's business, that presumption is rebutted for a number of reasons. See General Statutes § 34-45 (4). Repealed eff. July 1, 1997, 1995 Public Acts, No. 95-341, § 57, 58.
First, the checks were credited to the plaintiff beginning more than two years after the transfer of the $100,000. Second, there was no credible evidence that the plaintiff knew or should have known that the checks were in the nature of profit sharing, rather than a loan repayment. Third, although the defendant did send some profit and loss statements and letters to the CT Page 10022 plaintiff, none unambiguously declared the existence of a partnership relationship. Indeed, they could have been reasonably construed as excuses for being unable to pay the loan payments. Moreover, the amounts actually credited to the plaintiff bore no relationship to the declared gallery profits, either by tax return or profit loss statement, on a sustained, annual basis, and nothing in the evidence introduced describes what percentage interest, if any, the plaintiff held in either the assets, or profits and losses of the business.
Accordingly, I conclude that the defendant's claim of partnership was not supported by the credible evidence and must fail.
 III.
I conclude from the credible evidence, despite the unusual relationship the parties had, and the utter lack of sophistication in entering into the transaction, that the plaintiff has met his burden of proof that the $100,000 was a loan, which was to be repaid. This conclusion is supported by plaintiff's Exhibit 1, which refers to a loan, and several letters from the defendant to him which refer to repayment of the funds by her.
Turning now to the defense of the statute of limitations, General Statutes § 52-581 (a) provides: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."
The defendant argues that the plaintiff's version of the oral agreement contemplated 24 monthly installment payments commencing March, 1990, and since no such installment payments were made, the agreement was breached March, 1990 and the three year statute began to run, at that time, cutting off the plaintiff's right to sue as of March 1993.
The court disagrees. The modification in July, 1992, accompanied by a number of payments until January, 1994, served to toll the statute. It is well settled that the defense of the statute of limitations "can be lost by an unequivocal acknowledgement of the debt, such as a new promise, an CT Page 10023 unqualified recognition of the debt, or a payment on account."Wells v. Carson, 140 Conn. 474, 476 (1953).
It is not necessary to decide under the circumstances present here, whether the promise to repay was on demand, payable in monthly installments as the defendant argues, or within three years as the plaintiff claims. In any case, the statute of limitations, because of the payments on account made by the defendant, does not bar the plaintiff's claim, as suit was timely commenced.
I find that the balance due the plaintiff from the defendant on the oral agreement is $86,000.
Judgment may therefore enter for the plaintiff on the second count to recover from the defendant the sum of $86,000 together with interest from and after January 5, 1994 at the statutory rate.
Judgment may enter for the defendant on the first count.
Teller, J.